**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

JEMELL TATUM,

Plaintiff,

-against-

AMAZON.COM SERVICES LLC,

Defendant.

---------------------------------------------------------------------x

**Case No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jemell Tatum ("Plaintiff" or "Mrs. Tatum"), by and through her attorneys, Nisar Law Group, P.C., hereby complains of Defendant Amazon.com Services LLC ("Amazon" or "Defendant"), based upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Mrs. Tatum, a Black woman, brings this action alleging that Defendant Amazon.com Services LLC unlawfully discriminated against her based upon her race, subjected her to a hostile work environment, and retaliated against her for engaging in protected activity. Mrs. Tatum was employed by Amazon as a Creative Project Manager within its NASM Creative Ops organization from July 29, 2024, until her unlawful termination on February 11, 2026. Throughout her employment, Mrs. Tatum was the only Black woman on the Haul team and in the Creative Project Management department. Prior to October 2025, Mrs. Tatum received no documented performance concerns, formal coaching, or written warnings. Beginning in October 2025, Amazon subjected Mrs. Tatum to an unwarranted and procedurally defective Performance Improvement Plan, exclusion from core communications and meetings, a pattern of racially coded feedback, and successive performance actions, all of which were initiated or escalated immediately following Mrs. Tatum's complaints of race discrimination, hostile work environment, and retaliation. Amazon terminated Mrs. Tatum's employment on February 11, 2026, just days after she made a

formal protected disclosure to senior Amazon leadership invoking federal, state, and city anti-discrimination and anti-retaliation laws.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), New York Labor Law § 740, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Plaintiff seeks to recover back pay, front pay, compensatory damages including emotional distress, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under 42 U.S.C. § 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. At all relevant times, Plaintiff was employed at Amazon's JFK27 facility at 12 W. 39th Street in New York, New York ("JFK27 facility"), which is located within this judicial district, and the adverse employment actions described herein were taken against Plaintiff in connection with that employment.

## THE PARTIES

5. Plaintiff Jemell Tatum is a Black woman residing in the Bronx, New York. At all relevant times, Plaintiff was employed by Defendant as a Creative Project Manager at Level 5 within Amazon's NASM Creative Ops organization, earning an annual salary of $120,000.

6. Defendant Amazon.com Services LLC is a limited liability company with its principal place of business at 410 Terry Ave North, Seattle, Washington 98109. Defendant is an

employer engaged in commerce within the meaning of applicable federal, state, and city anti-discrimination laws. At all relevant times, Defendant employed Plaintiff at its JFK27 facility in New York, New York.

## FACTUAL ALLEGATIONS

### Background and Qualifications

7. Mrs. Tatum commenced employment with Amazon on July 29, 2024, as a Creative Project Manager within the NASM Creative Ops organization, Project Haul, at Amazon's JFK27 facility in New York, New York. Her annual base salary was $120,000, and she was also entitled to a Year 1 sign-on payment of $25,000, a Year 2 sign-on payment of $20,000, and a grant of 315 restricted stock units vesting over a four-year period.

8. Mrs. Tatum's primary job duties included managing and tracking creative projects for the Haul team, managing project work-back schedules, and coordinating communications across multiple platforms for the Haul Pod.

9. Mrs. Tatum is a Black woman and, at all relevant times, was the only Black woman on the Haul team and in the Creative Project Management department.

10. Prior to October 2025, Mrs. Tatum received no documented performance concerns, formal coaching, or written warnings, and she competently performed her duties throughout that period.

### Discriminatory Treatment and Hostile Work Environment

11. On October 21, 2025, Plaintiff was abruptly placed on a Performance Improvement Plan ("PIP"), which Amazon internally refers to as a "Pivot," by her then-manager, Libby Miner, who upon information and belief is Caucasian. The PIP contained allegations that had never been previously communicated to Mrs. Tatum and included factually inaccurate information. Although Amazon's standard PIP duration is typically 30, 60, or 90 days, Plaintiff was given a completion

deadline of November 3, 2025, approximately one week after the decision window date. During that abbreviated timeframe, Plaintiff was expected to complete substantial deliverables, including developing playbooks and roadmaps and training cross-functional partners, while simultaneously managing critical responsibilities related to Prime Big Deal Days and Black Friday/Cyber Monday project tracking, rendering the abbreviated timeline and workload unreasonable to satisfy the requirements of the PIP.

12. During the week of October 20, 2025, while the PIP was pending HR review after Plaintiff raised concerns about factual inaccuracies, including notifying HR of such inaccuracies and that her own manager had acknowledged no evidence supporting the PIP, she experienced repeated exclusion from core project communications and meetings tied to her role. Specifically, project deliverables were sent directly to the Marketing team by the Design Director without Mrs. Tatum's knowledge or involvement, and the Creative Director engaged another project manager instead of Mrs. Tatum, bypassing her as the lead Project Manager for the Haul Pod.

13. On October 24, 2025, Mrs. Tatum filed a formal complaint with HR Partner Raina Bates, explicitly raising concerns of discrimination based on her race, hostile work environment, exclusion from critical communications, and role bypassing. Mrs. Tatum identified herself as a Black woman and stated her awareness that she was protected under federal and local anti-discrimination laws against "any form of workplace discrimination, retaliation, or exclusion that creates unequal conditions or interferes with [her] ability to perform [her] job."

14. On October 27, 2025, HR rescinded the PIP after confirming it lacked required documentation, coaching, feedback, and written performance goals, effectively admitting it was issued in error and had not complied with Amazon's performance management requirements. On that same day, Plaintiff attended a Haul Department Insights meeting with her former manager, Libby Miner, and Kevin Roff, whom Ms. Miner had assigned to assist with the Haul program

during the busy October–November period. During the meeting, Mr. Roff presented his assessment of the Haul program, which did not identify Plaintiff as the source of the team's challenges but instead identified issues involving the Marketing and Design teams and the need for leadership support to improve service-level agreement ("SLA") adherence. Following the rescission of the PIP, HR representative Raina Bates initiated an investigation into Plaintiff's Focus review and her recent complaints. Also on October 27, 2025, Plaintiff learned that she had been excluded from a Black Friday/Cyber Monday project check-in meeting series organized by Creative Director Jane Kim and had to be added to the meetings by a designer, despite prior discussions that Plaintiff, as the lead Project Manager, would be included.

15. On October 29, 2025, Mrs. Tatum filed a second complaint with HR Partner Raina Bates regarding continued undermining and bypassing by her former manager, Libby Miner, during the Weekly Creative Sync, a meeting that Plaintiff managed. The incident occurred while Plaintiff was attempting to lead a process alignment discussion with her team to address ongoing instances in which she had been bypassed in cross-functional communications. In her complaint, Mrs. Tatum identified herself as "the only full-time Black woman PM in Creative Ops" and stated that the conduct "could reasonably be perceived as a microaggression and contributes to what has now become a hostile work environment."

16. On November 3, 2025, manager Libby Miner was removed from a people-manager role and transitioned to an individual contributor role. On November 5, 2025, Lucy Wenas, the skip-level manager who had approved the rescinded PIP, became Mrs. Tatum's direct manager.

17. Within days of HR closing the initial investigation on November 6, 2025, and within days of Mrs. Tatum's initial protected complaints, Mrs. Tatum was placed on a new "Focus" performance plan. No formal documentation or proper approvals accompanied this action. HR Partner Raina Bates acknowledged that the prior feedback underlying the Focus plan had not been

previously communicated to Mrs. Tatum.

18. On November 9, 2025, Mrs. Tatum filed a complaint with Amazon's Ethics Line alleging retaliation, hostile work environment, and potential discrimination based on her race and gender as a Black woman. Amazon assigned this complaint Case No. 20251110-1692230.

19. On November 10, 2025, following Plaintiff's ongoing complaints, Senior HR Partner Jessi Reuwer removed HR Partner Raina Bates from Mrs. Tatum's matter and reassigned Senior HR Partner Nicole Boxleitner.

20. On November 13, 2025, new manager Lucy Wenas sent Mrs. Tatum a "Formal Performance Documentation" email containing subjective and racialized characterizations of Mrs. Tatum's conduct, including references to her "tone," "rigidity," and "confrontational behavior." These characterizations had never been raised before and appeared only after Mrs. Tatum engaged in protected activity.

21. On November 14, 2025, Amazon required Mrs. Tatum to attend a "Formal Performance Discussion" meeting with Lucy Wenas and Nicole Boxleitner. Lucy Wenas imposed a requirement that Mrs. Tatum submit daily check-ins to her manager. When Mrs. Tatum asked whether this requirement applied to all Creative Project Managers who became Lucy's direct reports on November 5, neither Wenas nor Boxleitner provided a clear answer, indicating that the daily check-in requirement was applied uniquely to Mrs. Tatum.

22. On November 17, 2025, Mrs. Tatum submitted a detailed complaint to her manager and HR Partner, as well as Heidi Ware, Skip Level Manager, and Doug Robinson, HRP Director, outlining inaccuracies, retaliatory behavior, and the creation of a hostile work environment. Mrs. Tatum explicitly raised concerns of racial implicit bias, noting: "Subjective assessments involving tone, demeanor, 'rigidity,' or perceived interpersonal discomfort have been widely recognized in employment law and research as disproportionately affecting employees from underrepresented

groups. Given my protected characteristics and the well-documented impact that subjective criteria can have on the evaluation of Black employees, the reliance on tone-based and personality-based interpretations is especially concerning under Title VII, the NYSHRL, and the NYCHRL."

23. As the only Black woman on the team, Mrs. Tatum was particularly concerned that the performance narrative being constructed against her reflected the racialized stereotype of the "angry Black woman," which she raised with Amazon HR and management.

24. Mrs. Tatum was further subjected to subjective and unmeasurable "success criteria" under the Focus plan that included requirements for "zero escalations," "positive feedback from all stakeholders," and "restored trust," none of which were tied to objective performance indicators. These criteria were not applied to other project managers on Mrs. Tatum's team who were also not subjected to the same performance management process.

25. On or around November 18, 2025, Mrs. Tatum raised a third concern of racial bias and retaliation to the HR Director Robinson, HR Partner Boxleitner, and PXT Director Rich Cooper. On or around November 24, 2025, she raised a fourth such concern to the PXT Director, CER Investigator, and PXT Vice President Tonya Hallett.

26. CER Investigator Laura Garofalo conducted an investigation from November through December 2025. Around November and December 2025, Ms. Reuwer's direct reports were reassigned under other managers, and she was replaced by HR Partner Manager Stubel, information unbeknownst to Plaintiff at the time.

27. On December 24, 2025, Garofalo communicated that she "did not find a violation of Amazon policy or standards of conduct regarding your specific concerns." Garofalo stated that the PIP and the original Focus were rescinded "due to a procedural issue, not because the underlying concerns were invalid." Although Garofalo acknowledged that the investigation identified certain inconsistencies, including discrepancies in dates, she characterized them as

inadvertent and not material to the decision to reinstate the Focus. Garofalo further stated that the reopened Focus included both concerns from the original Focus and additional performance concerns, despite the original Focus having been rescinded for lacking the required documentation. During the investigation, Garofalo was initially unable to confirm the date on which the reopened Focus plan had been entered into Amazon's Ivy system, a material fact relevant to the retaliation timeline. Following Plaintiff's inquiries, Garofalo later confirmed that the reopened Focus was entered into the Ivy system on November 8, 2025, a Saturday, three days after Lucy Wenas became Plaintiff's manager and two days after the initial HR investigation had concluded.

28. During the investigation, Plaintiff questioned why Kevin Roff, the only witness identified during the initial HR investigation, had not been interviewed. On December 16, 2025, Mr. Roff confirmed to Plaintiff via Slack that the name "Raina Bates" was not familiar to him, raising questions regarding whether he had been contacted during the initial investigation as represented.

29. Plaintiff also questioned Garofalo regarding the November 13, 2025, email from Lucy Wenas, which expressly described itself as the "official documentation of performance issues that will be addressed through the reopened Focus." Garofalo stated that the email was not necessarily the Focus document itself, despite its language indicating that it served as the formal documentation supporting the reopened Focus.

30. Plaintiff further questioned why Amazon continued conducting performance-related discussions during the second investigation when HR had directed that such discussions be paused during the first investigation, despite the second investigation involving substantially similar concerns regarding Plaintiff's treatment and performance management.

31. On January 2, 2026, Mrs. Tatum submitted a protected complaint to HR alleging continued retaliation and the ongoing bypassing of her role by her manager, Lucy Wenas, in

connection with the Hot Streaks project. Plaintiff alleged that Marketing initially requested text-only creative but later acknowledged that the request had been made in error. Rather than notifying Plaintiff directly of the mistake, the Marketing representative escalated the matter to their manager and to Ms. Wenas. Ms. Wenas then contacted Kevin Roff, who had been assigned as project management support, and the project's designer, instead of communicating directly with Plaintiff, despite Plaintiff having already coordinated the correction of Marketing's error with the designer. Plaintiff alleged that Ms. Wenas subsequently characterized the incident as a performance issue without acknowledging that it originated from Marketing's erroneous request and failure to communicate directly with Plaintiff.

32. On January 5, 2026, Mrs. Tatum filed a second Ethics Line complaint alleging retaliation for engaging in protected activity, misuse of Amazon's performance management processes, improper HR and investigative conduct, continued retaliatory treatment following her January 2, 2026, HR complaint, and disparate treatment based on her race and gender. Plaintiff further alleged that incidents such as the Hot Streaks project were being improperly documented as performance deficiencies despite originating from errors outside of Plaintiff's control. Amazon closed this complaint without substantive investigation. Kat Frisbie, Manager of the Global Corporate Employee Relations ("GCER") Investigation Team, closed the matter on the basis that it was an appeal of a prior investigation. After Plaintiff clarified that the complaint raised new allegations and was not an appeal, Ms. Frisbie did not reopen the investigation or otherwise respond to Plaintiff's clarification. Plaintiff further alleges that the Hot Streaks incident was later cited as a basis for the new Pivot issued on February 3, 2026.

33. On January 23, 2026, Director of Employee Relations Eric Sjoding threatened Mrs. Tatum that "continued escalation could result in 'corrective action,'" a clear attempt to chill her protected activity.

34. On January 27, 2026, prior to her scheduled 1:1 meeting with Lucy Wenas and Nicole Boxleitner, Mrs. Tatum observed that the meeting invitation still contained a November 18, 2025, entry, despite that meeting having been canceled, and that the November 14, 2025, entry likewise had not been updated. Mrs. Tatum questioned whether these stale entries reflected an attempt to retroactively document performance-related concerns for meetings that never occurred. During the January 27, 2026, meeting, Mrs. Tatum further questioned why the two performance issues being relied upon (dated November 12 and November 25, 2025) had not been raised before her protected activity and asked what documented performance deficiencies justified placing her into Focus. Lucy acknowledged that the November 25 issue had never previously been discussed with Mrs. Tatum.

35. During the same meeting, Ms. Boxleitner stated that Focus was an ongoing document that managers could update and that employees could be placed on Focus without prior documentation or coaching. Mrs. Tatum responded that this contradicted the company's Focus Wiki, which stated that performance gaps must be identified before placement into Focus and approved by the employee's manager, skip-level manager, and HR Partner. Ms. Boxleitner stated that the applicable policy differed from the Wiki and promised to provide the correct policy, but no alternative policy was ever produced despite that representation.

36. Amazon later cited, in the Pivot issued on February 3, 2026, Mrs. Tatum's handling of a rush asset request submitted on or around January 28, 2026, with a release date of January 30, 2026, as an alleged performance failure. Mrs. Tatum responded the following business day, as she had received the corresponding request after office hours, identified a discrepancy in the submitted asset IDs, flagged the issue, promptly notified the appropriate stakeholders, and requested the corrected information necessary to proceed. After receiving the required inputs, Plaintiff coordinated the work, and the assets were released on time on January 30, 2026. Despite Plaintiff

following the established process and successfully meeting the release deadline, Amazon nonetheless characterized her handling of the request as a performance deficiency in the new Pivot.

**Termination in Retaliation for Protected Disclosure**

37. On February 2, 2026, Mrs. Tatum made a formal Protected Whistleblower Disclosure, sent at 2:15 PM via email to Beth Galetti, Senior Vice President of People Experience and Technology ("PXT"), and Eric Adams, Vice President of PXT, invoking federal, state, and city anti-discrimination and anti-retaliation statutes.

38. Within approximately 24 hours of the Protected Disclosure, on February 3, 2026, Amazon presented Mrs. Tatum with a "Pivot" plan, the final-step performance program before termination. The Pivot was presented by Plaintiff's manager, Lucy Wenas, and Senior HR Partner Nicole Boxleitner, both of whom had received Plaintiff's Protected Disclosure as recipients of the email sent to Senior Vice President Beth Galetti and PXT Vice President Eric Adams. The new Pivot cited three alleged performance incidents, all of which Mrs. Tatum disputes and none of which predated her protected activity.

39. On or about the same date, the Director of Employee Relations, Eric Sjoding, responded to Mrs. Tatum's Protected Disclosure, stating that Amazon's findings "remain consistent and unchanged" and that "neither GCER, PXT or other Amazon senior leaders will engage in further back-and-forth on these same issues." He further represented that Mrs. Tatum's concerns had already been "reviewed through multiple channels and at multiple leadership levels." Despite those asserted reviews, Mrs. Tatum's repeated requests for the documented performance deficiencies that allegedly predated her protected activity, and that formed the basis for her placement into a new Focus plan after the prior plan was rescinded, were never answered or supported with documentation. This refusal to address the central factual basis of her concerns prompted Mrs. Tatum to pursue her Protected Disclosure through Amazon's whistleblower

process.

40. On February 5, 2026, Plaintiff made another protected complaint responding to the new Pivot's entries and contradicting each alleged performance issue. HR never responded to this complaint.

41. On February 9, 2026, Amazon convened a meeting with Mrs. Tatum, HR Partner Nicole Boxleitner, and Amazon Enterprise Protection Program representative Hamza Jamil. Amazon informed Mrs. Tatum that it had detected she had forwarded employment-related materials, including performance documents and a meeting summary related to her employment, to her personal email account. Amazon demanded that Mrs. Tatum sign a "Certification of Deletion" within 24 hours, threatening termination for refusal. That same evening, Amazon revoked Mrs. Tatum's access to her work laptop and Slack, preventing her from working, attending a meeting the following day with her manager to ask questions on the improvement plan for clarity, or making an informed decision about the Pivot plan prior to the close of the decision window.

42. On February 11, 2026, Amazon terminated Mrs. Tatum's employment. The stated reason was violation of Amazon's data handling policy. Mrs. Tatum maintains that she preserved employment-related materials, including performance plans, HR correspondence, and meeting summaries relating to her employment, in connection with her discrimination and retaliation claims. Importantly, upon information and belief, Defendant's own policy provides protection to employees engaging in such conduct.

43. As a result of Defendant's unlawful conduct, Mrs. Tatum has suffered and continues to suffer lost wages and benefits, including back pay, the unearned portion of her Year 2 sign-on payment, and the loss of unvested restricted stock units. Mrs. Tatum has also suffered emotional distress, including anxiety, disruption of her family's stability, reputational harm, and the derailment of her four-year career trajectory at Amazon.

**Comparator Evidence**

44. At all relevant times, other Creative Project Managers on Mrs. Tatum's team, with similar duties and seniority, including Dustin Turner, Kevin Roff, and Lauren Torres, who upon information and belief are non-Black employees, became direct reports of Lucy Wenas on or about November 5, 2025. Unlike Plaintiff, they were not subjected to the same pattern of performance management actions, including repeated Focus or Pivot plans, exclusion from project communications, shifting or subjective performance success criteria and expectations, heightened monitoring, or comparable disciplinary escalation.

45. Kevin Roff, who serves as Mrs. Tatum's support PM on the Haul Pod, acknowledged in a discussion with Mrs. Tatum and manager Libby Miner on or about October 27, 2025, that he had observed Mrs. Tatum's exclusion and bypassing in communications during the week of October 20, 2025. Kevin Roff was not subject to any performance management action, PIP, Focus plan, Pivot, or comparable performance management action. Mr. Roff also advised Plaintiff that he questioned why he continued to be assigned to support the Haul Pod after completing the assessment requested of him because he had not been provided with a reason for the continued assignment and Plaintiff remained responsible for the day-to-day management of the work.

46. During the 2026 annual performance review process, Plaintiff completed her required self-assessment on or about January 29, 2026. After reviewing Plaintiff's self-assessment, Lucy Wenas stated that there were "gaps" between Plaintiff's assessment and Ms. Wenas's evaluation and advised that she would add a management assessment to the performance document. Upon information and belief, no such daily check-in requirement or assessment was added to anyone else and similarly situated Creative Project Managers were not subjected to the same treatment during the self-assessment process.

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**
**(Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981)**

47. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

48. 42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens. This right includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

49. At all relevant times, Mrs. Tatum, a Black woman, was a member of a racial minority and a protected class within the meaning of 42 U.S.C. § 1981.

50. Mrs. Tatum was qualified for and competently performed her position as Creative Project Manager throughout her employment. Prior to October 2025, she received no documented performance concerns, formal coaching, or written warnings. Furthermore, Plaintiff disputes the performance issues alleged by Defendant beginning in or around October 2025 and denies that those allegations accurately reflected her performance, qualifications, or conduct. As described throughout this complaint, Plaintiff maintains that she continued to competently perform the duties of her position and that the alleged performance deficiencies were not supported by her prior performance history.

51. As alleged throughout this Complaint, beginning in October 2025, Defendant subjected Mrs. Tatum to a racially discriminatory pattern of conduct that affected the terms, conditions, and privileges of her employment, including an unwarranted PIP, exclusion from core communications, bypassing of her role, racially coded feedback invoking subjective characterizations of her “tone,” “rigidity,” and “confrontational behavior” consistent with the “angry Black woman” stereotype, subjective and unmeasurable success criteria not applied to

similarly situated colleagues, unique daily check-in requirements not applied to other CPMs, and a pretextual termination.

52. As alleged throughout this Complaint, Mrs. Tatum was the only Black woman on the Haul team and in the Creative Project Management department. Similarly situated colleagues, including Dustin Turner, Kevin Roff, and Lauren Torres, were not subjected to the same performance management actions, exclusion, or scrutiny.

53. As alleged throughout this Complaint, the racially coded feedback and hostile conduct directed at Mrs. Tatum was sufficiently severe and pervasive to alter the conditions of her employment and to create an abusive working environment based on her race.

54. Defendant's discriminatory conduct was intentional and motivated, at least in part, by Mrs. Tatum's race.

55. As a direct and proximate result of Defendant's unlawful conduct in violation of 42 U.S.C. § 1981, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress including anxiety and harm to her professional reputation, and other pecuniary and non-pecuniary losses.

56. As Defendant's conduct was malicious, intentional, and in reckless disregard for Mrs. Tatum's federally protected rights, Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Retaliation in Violation of 42 U.S.C. § 1981)**

57. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

58. Mrs. Tatum engaged in protected activity within the meaning of 42 U.S.C. § 1981 by complaining of race discrimination and a racially hostile work environment. Mrs. Tatum's protected complaints included, among others: her October 24, 2025 formal complaint to HR

explicitly raising race discrimination and hostile work environment concerns; her October 29, 2025 complaint identifying herself as the only Black woman PM in Creative Ops and characterizing the conduct as a microaggression; her November 9, 2025 Ethics Line complaint identifying retaliation and potential discrimination based on her race; her November 17, 2025 complaint invoking NYSHRL, NYCHRL, and the impact of implicit racial bias in subjective performance criteria; her November 18 and November 24, 2025 escalations to PXT Director Rich Cooper and PXT Vice President Tonya Hallett; her January 5, 2026 second Ethics Line complaint; and her February 2, 2026 formal Protected Disclosure to senior PXT leadership.

59. Immediately following Mrs. Tatum's protected complaints, Defendant subjected her to adverse employment actions including the issuance of an undocumented Focus plan (November 6-8, 2025), imposition of a unique daily check-in requirement (November 14, 2025), introduction of subjective and racially coded performance feedback (November 13, 2025), threats of corrective action for continued escalations (January 23, 2026), presentation of a final-step Pivot plan within approximately 24 hours of her February 2, 2026 Protected Disclosure, revocation of system access (February 9, 2026), and termination of employment (February 11, 2026).

60. A causal connection exists between Mrs. Tatum's protected activity and the adverse employment actions she suffered. The adverse actions escalated in direct temporal proximity to each protected complaint. The first protected complaint on October 24, 2025, was followed within days by a new Focus plan. February 2, 2026, Protected Disclosure to senior leadership was followed within approximately 24 hours by the Pivot plan. The termination followed nine days after the Protected Disclosure and two days after Amazon's security investigation.

61. The stated reason for Mrs. Tatum's termination, violation of Amazon's data handling policy, is pretextual. The employment-related materials Mrs. Tatum preserved fall within the category of materials employees are expressly permitted to retain under the plain terms of

Amazon's own data handling policy, which permits retention of "personnel documents (such as W-2 forms, pay records, and documents regarding the terms of my employment with Amazon)."

62. As a direct and proximate result of Defendant's unlawful retaliation in violation of 42 U.S.C. § 1981, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress, reputational harm, and other pecuniary and non-pecuniary losses.

63. As Defendant's retaliatory conduct was malicious, intentional, and in reckless disregard of Mrs. Tatum's federally protected rights, Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Race and Gender Discrimination and Hostile Work Environment in Violation of N.Y. Exec. Law § 296)**

64. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

65. The New York State Human Rights Law, N.Y. Exec. Law § 296, makes it an unlawful discriminatory practice for an employer, because of an individual's race, to discriminate against such individual in terms, conditions, or privileges of employment.

66. Plaintiff is a member of a protected class pursuant to N.Y. Exec. Law § 296 by virtue of her race as a Black woman.

67. Plaintiff possessed the proper qualifications and competently performed her duties as Creative Project Manager throughout her employment with Defendant.

68. As alleged throughout this Complaint, Defendant discriminated against Mrs. Tatum in terms, conditions, and privileges of her employment on account of her race, treating her less well than similarly situated colleagues. This included the imposition of an unwarranted and undocumented PIP, exclusion from core communications and project meetings, subjective and racially coded performance feedback invoking characterizations of her "tone," "rigidity," and

"confrontational behavior," unique performance scrutiny and daily check-in requirements not applied to similarly situated CPMs, and termination under pretextual circumstances.

69. As the only Black woman on the Haul team and in the Creative Project Management department, Mrs. Tatum was subjected to conduct that created a hostile work environment based on her race, including the pervasive application of racialized stereotypes to evaluate her conduct and performance, exclusion from meetings and communications, and a pattern of escalating adverse actions tied directly to her race discrimination complaints.

70. Defendant's discriminatory conduct was a motivating factor in the adverse employment actions taken against Mrs. Tatum, including her termination.

71. As a direct and proximate result of Defendant's unlawful conduct in violation of N.Y. Exec. Law § 296, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress including anxiety, reputational harm, and other pecuniary and non-pecuniary losses.

72. Plaintiff seeks back pay, compensatory damages including emotional distress damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest from and against Defendant.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of N.Y. Exec. Law § 296)**

73. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

74. N.Y. Exec. Law § 296 prohibits an employer from retaliating against an employee for opposing unlawful discriminatory practices, including filing complaints of race discrimination.

75. As alleged throughout this Complaint, Mrs. Tatum engaged in protected activity by making repeated, documented complaints of race discrimination and hostile work environment to

Amazon HR, the Amazon Ethics Line, and Amazon senior leadership, beginning on October 24, 2025, and continuing through her February 2, 2026 Protected Disclosure.

76. As alleged throughout this Complaint, Defendant subjected Mrs. Tatum to adverse employment actions immediately following and in temporal proximity to each of her protected complaints, including the issuance of the Focus plan, the imposition of unique daily check-in requirements, threats of corrective action, the Pivot plan issued within approximately 24 hours of her Protected Disclosure, revocation of system access, and termination of employment.

77. As alleged throughout this Complaint, the stated reason for Mrs. Tatum's termination is pretextual.

78. As a direct and proximate result of Defendant's unlawful retaliation in violation of N.Y. Exec. Law § 296, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress, reputational harm, and other pecuniary and non-pecuniary losses.

79. Plaintiff seeks back pay, compensatory damages including emotional distress damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest from and against Defendant.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Race and Gender Discrimination and Hostile Work Environment in Violation of N.Y.C. Admin. Code § 8-107)**

80. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

81. The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, makes it an unlawful discriminatory practice for an employer, because of the actual or perceived race of any person, to discriminate against such person in the terms, conditions, or privileges of employment.

82. Plaintiff is a member of a protected class pursuant to N.Y.C. Admin. Code § 8-107

by virtue of her race as a Black woman.

83. Plaintiff possessed the proper qualifications and competently performed her duties throughout her employment with Defendant at its facility in New York, New York.

84. As alleged throughout this Complaint, Defendant treated Mrs. Tatum less well than her similarly situated colleagues in terms, conditions, and privileges of her employment because of her race. Under the NYCHRL's broad anti-discrimination standard, the conduct alleged herein, including unwarranted performance actions, exclusion from communications, subjective racially coded feedback, unique requirements not applied to similarly situated CPMs, and pretextual termination, constitutes unlawful differential treatment based on race.

85. As alleged throughout this Complaint, the conduct directed at Mrs. Tatum was based at least in part on her race as a Black woman, including the application of the racialized "angry Black woman" stereotype to characterize her workplace conduct and communications.

86. Defendant's discriminatory conduct was a motivating factor in the adverse employment actions taken against Mrs. Tatum.

87. As a direct and proximate result of Defendant's unlawful conduct in violation of N.Y.C. Admin. Code § 8-107, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress including anxiety and reputational harm, and other pecuniary and non-pecuniary losses.

88. Plaintiff seeks back pay, compensatory damages including emotional distress damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest from and against Defendant.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of N.Y.C. Admin. Code § 8-107)**

89. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

90. N.Y.C. Admin. Code § 8-107 prohibits an employer from retaliating against an employee for opposing conduct made unlawful by the NYCHRL, including complaints of race discrimination.

91. As alleged throughout this Complaint, Mrs. Tatum engaged in protected activity under the NYCHRL by making repeated complaints of race discrimination, hostile work environment, and retaliation to Amazon HR, the Amazon Ethics Line, and senior Amazon leadership.

92. As alleged throughout this Complaint, Defendant subjected Mrs. Tatum to adverse employment actions that would reasonably deter a person from engaging in protected activity, including the imposition of performance plans without documentation, the application of racially coded and subjective success criteria, threats of corrective action for escalating protected complaints, the presentation of a Pivot plan within approximately 24 hours of her Protected Disclosure, the revocation of system access, and the termination of her employment.

93. As alleged throughout this Complaint, the subjective and racialized characterizations of Mrs. Tatum's conduct, including references to her "tone," "rigidity," and being "confrontational" or "argumentative," combined with the threat of corrective action for continued protected escalations, constituted conduct that would dissuade a reasonable employee from continuing to engage in protected activity, in violation of the broad anti-retaliation protections of the NYCHRL.

94. As a direct and proximate result of Defendant's unlawful retaliation in violation of N.Y.C. Admin. Code § 8-107, Mrs. Tatum suffered and continues to suffer lost wages and benefits, emotional distress, reputational harm, and other pecuniary and non-pecuniary losses.

95. Plaintiff seeks back pay, compensatory damages including emotional distress damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest from and against Defendant.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of New York Labor Law § 740)**

96. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

97. New York Labor Law § 740 prohibits an employer from taking retaliatory action against an employee because the employee discloses, or threatens to disclose, to a supervisor an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule, or regulation.

98. Race discrimination and retaliation in the workplace violate 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law, each of which constitutes a "law, rule or regulation" within the meaning of N.Y. Lab. Law § 740(1)(c).

99. Mrs. Tatum reasonably and in good faith believed that Amazon's conduct toward her, as alleged throughout this Complaint, violated the foregoing anti-discrimination and anti-retaliation laws, and she disclosed her belief to her supervisors and to Amazon's Human Resources, Ethics Line, and PXT leadership on repeated occasions, including on October 24, 2025; October 29, 2025; November 9, 2025; November 17, 2025; November 18, 2025; November 24, 2025; January 5, 2026; and February 2, 2026.

100. Mrs. Tatum's disclosures afforded Amazon repeated opportunities to correct its conduct, which Amazon failed to do.

101. In direct response to Mrs. Tatum's protected disclosures, and in particular within days of her February 2, 2026, Protected Disclosure to senior PXT leadership, Amazon subjected

Mrs. Tatum to retaliatory action, including the presentation of a final-step Pivot plan, revocation of her system access, and termination of her employment on February 11, 2026.

102. Amazon's stated reason for terminating Mrs. Tatum, an alleged violation of its data handling policy, was pretextual and was predicated upon Mrs. Tatum's protected whistleblowing disclosures rather than any legitimate, non-retaliatory business reason.

103. As a direct and proximate result of Amazon's retaliatory conduct in violation of N.Y. Lab. Law § 740, Mrs. Tatum has suffered and continues to suffer lost wages and benefits, emotional distress, and reputational harm, and is entitled to injunctive relief, reinstatement or front pay, compensation for lost wages and benefits, a civil penalty, punitive damages for Amazon's willful, malicious, and wanton conduct, and reasonable attorneys' fees and costs pursuant to N.Y. Lab. Law § 740(5).

## **JURY DEMAND**

104. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff Jemell Tatum respectfully requests that the Court enter judgment in her favor and against Defendant Amazon.com Services LLC as follows:

A. A declaratory judgment that Defendant's actions, conduct, and practices complained of herein violated 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, the New York Labor Law § 740, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mrs. Tatum for all monetary and economic harm, including but not limited to back pay for lost wages and benefits from the date of termination, front pay for future lost

earnings and benefits, loss of the unearned portion of the Year 2 sign-on payment, the cash value of unvested restricted stock units, and a civil penalty not to exceed $10,000 pursuant to N.Y. Labor Law § 740(5)(f);

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mrs. Tatum for all non-monetary and compensatory harm, including but not limited to mental anguish, emotional distress, anxiety, humiliation, embarrassment, loss of self-esteem and self-confidence, and reputational harm;

E. An award of damages for any and all other monetary and non-monetary losses suffered by Mrs. Tatum in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages, given that Defendant's conduct was malicious, intentional, and in willful disregard for Mrs. Tatum's federally and state-protected civil rights;

G. An award of costs and attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Maria Cedeno Cassinelli*

**Maria Cedeno Cassinelli, Esq.**
NY Bar No. 6198592
Mahir Nisar, Esq.
**NISAR LAW GROUP, P.C.**
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (212) 600-9534
Direct: (646) 693-5913
Email: maria@nisarlaw.com;
mnisar@nisarlaw.com
*Attorneys for Plaintiff*
*Jemell Tatum*